**KLEIN et al. v. ACCO PRODUCTS, Inc., et al.***
**No. 470.**

Circuit Court of Appeals, Second Circuit.
July 22, 1935.

*Rehearing denied 79 F.(2d) 512.

son, entered into an agreement March 25, 1913, forming a partnership to continue the business theretofore conducted by the son under the trade-name of American Clip Company. Prior to this, the father financed the son's business. The agreement, in substance, provided that each was to have coequal rights in and to the business and to all of its assets and neither to have any claim against the other for anything prior to the date of this agreement. No personal service whatsoever was required of the father. The son granted to the firm an exclusive license to use, manufacture, and sell any and all goods covered by patents theretofore or thereafter issued to him. The son was to be the sole manager with appropriate powers, and agreed to devote his entire time, attention, and skill to the business for the mutual benefit of the partners. He was allowed a salary of $40 per week to be charged as an expense against the business. The licenses granted by him to the firm were to cease if the son no longer remained the sole manager. The parties were bound not to dispose of their interest in the business without the other party's consent; each granting to the other an option to buy his share at a valuation fixed by named appraisers before selling it. If either party should die, the survivor was given a like option to purchase the decedent's interest in the business. The contract provided that "this agreement shall be binding and inure to the benefit of the parties hereto and each of their executors and administrators."

It was a paper clip and fastener business, and was conducted under the partnership agreement until the father's death in 1918. By his will, he designated Adele L. Klein executrix, and bequeathed his undivided half interest in the business to his two daughters and son, his other three children.

The son never exercised his option to buy his father's interest, but continued to engage in the business as before until December, 1929, when, without knowledge of the appellees, he caused the business to be incorporated as the Acco Products, Inc., and had all but the qualifying shares issued to himself. The only payments the son made on account of his father's interest in the business were monthly checks of $300—$175 rent and $125 profits—paid to Adele L. Klein. He withdrew $262,020.67 more than the $40 a week allowed as a sal-

James A. Dayton, of New York City (Stephen Callaghan and Ralph Stout, both of New York City, of counsel), for appellants.

Herman Forster, of New York City (Parnell T. Quinn, of New York City, of counsel), for appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

Fred J. Klein, Sr., of Detroit, Mich., and Fred J. Klein, Jr., of New York, father and

ary under the original partnership agreement.

■ Appellants admit liability to the appellees, but the amount is in dispute. The appellees claim they are entitled to one-half the profits of the business as well as one-half the assets of the business. They base their claim on the continuance of the partnership under the terms of the original agreement. The appellants contend that the partnership was dissolved by the death of the father, and seek to limit the liability to that proportion of the net profits which is attributable to the continued use of the decedent's half interest. The difference is clear if it be realized that the business grew and that some of the growth was due to the son's efforts. The converse statement of the appellants' position is the contention that they should be allowed a reasonable amount for the son's services and for the use of the patents before the net profits are determined for division. The appellees contend they are within the rule that dissolution of the partnership as a result of the death of a member may be avoided by agreement between the parties in the firm's articles of partnership. They advance as appropriate provisions the survivor's option, to buy at an appraised valuation a share of the deceased partner and the stipulation that the agreement shall be binding and inure to the benefit of the parties and their executors and administrators. These provisions cannot be so read. The survivor's option looks to the continuance of the business as a whole but not the preservation of the prior proprietory relations. If the managing partner died, he would cease to be the sole manager of the business, and, according to the contract, the firm would lose its right to use the patents under the license granted by the articles of partnership. The provisions in question are no more applicable to one party than the other, and it was clear that they were not directed at the effect of the death of the member on the dissolution of the partnership relation. It is admitted that the father's interest was left in the business with the consent of the executrix and legatees. The issue is whether the rights of the parties are still governed by the terms of the original partnership articles between the father and son. We think they are.

■ The executrix of the dead member and his legatees agreed that the business should be carried on and that the terms of the old contract should be sufficient. Cook v. Rogers' Adm'r (C. C.) 3 F. 69; First Nat. Bank v. Guarantee Title & Trust Co. (C. C. A.) 178 F. 187. This was the substance of conversations and conferences shortly after the father's funeral. The witnesses are unanimous in testifying that the son deprecated the need of a written memorandum of the terms of the oral agreement, referring to the several witnesses present as sufficient. This justifies the claim that the old contract with its more detailed provisions was to govern the relationship of the parties in the new partnership agreement. A rearrangement of the rights of the parties would be a complex matter, and it is incredible that a business man should rely on the memory of witnesses to record it. It seems clear that the oral agreement was a consent by all interested parties to continue under the written articles. That the son so understood it is indicated by his statement ten years later that the family still had a half interest in the business.

During this period, the son was obliged to give his sole time to the management of the business; his compensation was specifically fixed, and he had no right to further withdrawals from the profits. This was the limit of his reward under the terms of the partnership articles. Grant v. Fletcher (D. C.) 283 F. 243; Consaul v. Cummings, 222 U. S. 262, 32 S. Ct. 83, 56 L. Ed. 192; Ruggles v. Buckley (C. C. A.) 175 F. 57, 27 L. R. A. (N. S.) 541, 20 Ann. Cas. 1057; Comstock v. McDonald, 126 Mich. 142, 85 N. W. 579.

■ It was entirely competent for the executrix and legatees to agree with the surviving partner, since all interested joined in the agreement, to form a new partnership arrangement. City Nat. Bank v. Stone, 131 Mich. 588, 92 N. W. 99.

■ The court below held that the appellees were entitled to one-half of the assets of the business and one-half of its net profits. In so far as some of these profits were reinvested in the business, the decree allows a double recovery and must be modified by deducting from the net profits to be divided the amount reinvested. This is found by deducting from the total profits the sums of withdrawal of each member. The total net profits were $373,017.18; the son withdrew $262,020.67 during the period, and during the same period the appellees received $25,655—a total of $287,675.67 which, subtracted from the net profits, indicated $85,341.51 was reinvested in the business. Reducing the total net profits by

this amount, the appellees' half share therein would be \$143,837.82, from which must be deducted \$25,655 paid appellees, leaving a balance of \$118,182.82. In addition thereto, the appellees are entitled to one-half the assets of the Acco Products, Inc. They are entitled to follow assets of the partnership transferred into the corporation by Klein, Jr., and at appellees' option may take one-half the stock of the corporation, but not both. In the accounting to be had, the value of the assets are to be ascertained as of the date the son transferred them into the corporation—the date of incorporation. Interest will be allowed on the appellees' share of the profits from the date of each withdrawal; also on the value of appellees' one-half interest in the assets from the date of incorporation. A decree will be entered in accordance with this opinion.

Decree modified.