PETER B. SILVERSMITH *vs.* ABRAHAM SYDEMAN.

Suffolk.    November 8, 1939. — January 29, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Equity Jurisdiction*, Accounting.  *Partnership*, What constitutes.  *Fiduciary.    Corporation*, Officers and agents, Liquidation, Dividend.  *Agency*, Knowledge of agent, Ratification.  *Interest*.

Facts, found by a master in a suit in equity by one of the only two stockholders of a corporation against the other stockholder for an accounting respecting the winding up of the affairs of the corporation by the defendant after it ceased business, warranted the conclusion that the parties, although adopting the corporate form, had acted as partners and that the defendant as to the plaintiff was a fiduciary.

Upon facts found by a master, one of the only two stockholders of a corporation, in winding up its affairs under an agreement with the other stockholder as to whom in the circumstances he occupied a fiduciary relation, in the absence of express authority from the directors of the corporation was not entitled to credit himself with a discount on a note which was an asset of the corporation and which he received as his own in the accounting, nor with interest on noninterest bearing demand notes issued to him by the corporation for loans he had made to it, nor with a charge for his services in carrying through the liquidation.

Knowledge of a series of payments improperly made by the treasurer of a corporation from its funds to himself could not be imputed to it so as to show a ratification of the payments.

In the circumstances, a payment in distribution in liquidation of the assets of a corporation, although there had been no formal declaration of a dividend, was treated as a distribution of surplus and properly to have been applied in payment of a note of a stockholder, which was payable only out of dividends.

One of the only two stockholders of a corporation in charge of its liquidation by agreement with the other stockholder, toward whom he occupied the relation of a fiduciary, was chargeable with interest upon sums which he wrongfully had appropriated to himself, from the approximate dates of the misappropriations.

BILL IN EQUITY, filed in the Superior Court on November 23, 1936.

After a hearing by *Williams*, J., an interlocutory decree confirming the master's report and a final decree ordering the defendant to pay the plaintiff $1,282.94 with interest

from November 23, 1936, were entered by order of *Donnelly*, J.   Both parties appealed.

*J. B. Abrams*, (*F. G. Hinckley* with him,) for the plaintiff.

*J. J. Kaplan*, for the defendant.

RONAN, J.   This is a bill for an accounting for money collected and received by the defendant in winding up the affairs of the C. H. Graham Furniture Co., a Massachusetts corporation, in which the plaintiff owned one third of the capital stock and the defendant all the remaining stock.   The case was referred to a master, whose report was confirmed after the plaintiff's motion to recommit had been denied and the exceptions of both parties had been overruled.   Both parties appealed from a final decree establishing an indebtedness of the defendant to the plaintiff in a certain amount.

The plaintiff purchased one third of the capital stock of the C. H. Graham Furniture Co., hereinafter referred to as the furniture company, in 1919 for $8,000, one half of which he paid in cash and the balance of $4,000 by his note payable to the corporation.   In March, 1921, the defendant purchased all of the outstanding stock of the furniture company other than that held by the plaintiff.   A written agreement was then executed between the furniture company and the plaintiff which provided that, for a term of four years from April 1, 1921, the plaintiff should devote all his time to the active conduct of the furniture company in consideration of a salary at certain prescribed rates. ' The company executed another agreement with the defendant, by which the defendant agreed to act as general manager during the same four-year period as that designated in the plaintiff's agreement, and for which he was to receive compensation at the same rate as that paid to the plaintiff. The defendant was not required to devote his whole time to his duties of general manager but was required to devote only such time as he deemed necessary.   Another agreement was made by which the plaintiff was not required to pay his note of $4,000 held by the furniture company except out of dividends declared upon his stock.

The parties decided in the spring of 1923 to discontinue

the business of the furniture company and to liquidate its affairs. The furniture company then ceased active business. The plaintiff, with two other persons, formed a new corporation under the name of Taylor Furniture Co., hereinafter referred to as Taylor's, and this new corporation entered into an agreement with the furniture company on April 14, 1923, by which Taylor's agreed to purchase from the furniture company all its merchandise and to undertake the collection of its lease accounts. Taylor's was to pay for the merchandise by promissory notes maturing in eighteen months, without interest, and one of these notes was to be nonnegotiable and to represent the approximate amount of the net interest that the plaintiff had in the furniture company, it being "understood that the said Silversmith is to cause his net interest in the seller corporation to be transferred to the said new corporation as payment on account of" his subscription to stock in Taylor's. Taylor's, on June 16, 1923, bought the merchandise of the furniture company, paying $1,000 in cash, a note for $32,804.31 payable in eighteen months without interest, and a second note for $10,000 payable to the furniture company. This note was then indorsed by the latter payable to the plaintiff, and by him indorsed to Taylor's in payment of his stock in that company. The stockholders of the furniture company then voted to distribute a partial dividend in liquidation in the amount of $30,000. The parties intended that the $10,000 note which the plaintiff had received from the furniture company and given to Taylor's was to be his share of this dividend. The defendant took the note for $32,804.31 and charged the furniture company with the interest amounting to $2,952.39.

Taylor's conducted the liquidation of the lease accounts for some time, and both the plaintiff and the defendant were active in their collections until the plaintiff went to New York in 1925. On these accounts $72,000 were collected up to January 1, 1927, and $1,682.98 thereafter until the collections ceased in 1936.

At the time the furniture company discontinued business it owed $77,000 for money borrowed; $22,000 of this sum

was borrowed from the defendant, who held demand notes for it that made no mention of interest. The amount owed to the defendant on January 1, 1925, was $26,300. He presented an accounting to the plaintiff in February, 1927, but the plaintiff objected to the defendant crediting himself with the discount on the Taylor note and with interest on loans made to the furniture company, and the taking by the defendant of $28,000 instead of $20,000 of funds of the furniture company as provided in the stockholders' vote of June 16, 1923. This accounting was never considered by the parties to be final and the matter was left for further conferences, which were held, but the parties were unable to adjust the matters in dispute.

The defendant was acting as the treasurer and manager of the furniture company and was bound to act in good faith and with due regard to the interests of the company in the disbursement of its funds. *Calkins* v. *Wire Hardware Co.* 267 Mass. 52. *American Agricultural Chemical Co. of Massachusetts* v. *Robertson*, 273 Mass. 66, 83. Moreover, it could be found that the plaintiff and the defendant were acting as partners in the conduct of the company's business and in the liquidation of its property even though they had adopted a corporate form as the instrumentality by which they should associate in the furtherance of their joint venture. *Arnold* v. *Maxwell*, 223 Mass. 47. *Howe* v. *Chmielinski*, 237 Mass. 532.

The first accounting given to the plaintiff, in 1927, was followed by various conferences between the parties in an effort to settle the indebtedness of the defendant. At the last conference, in April, 1933, it was agreed that the defendant would correct and adjust those matters that were in dispute when a new accounting would be made after the liquidation was completed. The settlement of the company's affairs was finished in 1936. The master found that the defendant knew that the plaintiff "trusted him and relied upon him to do the right thing in the liquidation of the assets." He properly found that a fiduciary relationship existed between the parties from the time they first became associated in the furniture company.

Taylor's note for $32,804.31 was given to the furniture company in part payment for the goods that it purchased from the latter. The note was a corporate asset and the defendant, who was simply its custodian, had no right to appropriate to his own use the discount amounting to $2,952.39 without authority from the directors or such other officers as were empowered to direct its payment. *Lydia E. Pinkham Medicine Co.* v. *Gove,* 303 Mass. 1, 9, and cases cited. As the defendant has admitted charging the corporation with this amount, he has the burden of showing that he was justified in crediting said item to himself. *Little* v. *Phipps,* 208 Mass. 331. *Pappathanos* v. *Coakley,* 263 Mass. 401, 408. *Trade Mutual Liability Ins. Co.* v. *Peters,* 291 Mass. 79. The master's report does not show that any official, or the stockholders, of the company ever authorized the defendant to deduct a discount from this note and to charge the company with the amount deducted.

The defendant has charged and taken from the corporation $6,870.06 for interest on money loaned by him to the furniture company for which he held demand notes. We need not consider the plaintiff's contention that the defendant under the terms of his agreement of employment with the corporation dated April 5, 1921, to which reference has already been made, was to furnish funds without interest. He urges that that was one of the purposes for which the defendant was to be paid the same compensation as the plaintiff. The agreement makes no mention of the matter and does not, at least expressly, put any such burden upon the defendant. The defendant stood in a fiduciary position not only toward the corporation but also toward the plaintiff, its remaining stockholder. The notes themselves made no provision for the payment of interest. The report of the master does not disclose that the furniture company had ever taken any formal action upon the payment of interest or that the plaintiff ever knew that the defendant claimed to be entitled to interest until it appeared upon the accounting which was shown to him in 1927; and he then immediately objected and questioned the right of the defendant to take corporate funds

for this purpose. The retention by the defendant of sums for interest on money loaned to the furniture company was not the result of any express promise of the company or of the plaintiff. The mere rendition of valuable services for the benefit of a corporation by one of its officers is not enough to justify an implication in law that the corporation promised to pay for them, and, in order to recover, the defendant must show that they were rendered in such circumstances that the corporation, knowing that such services were being performed, either expected or ought reasonably to have expected that they were to be paid for. The defendant had entered into a written contract with the company which defined his duties and established his compensation. His compensation was fixed as equal to that of the plaintiff. His agreement, even though it did not cover the subject of loans, would not tend to support an inference that he was to get additional compensation for additional services or that he was to be paid in excess of the compensation payable to the plaintiff. He had a substantial investment in the company and it would be to his personal advantage to see that the company possessed proper financial resources. He had a two-thirds interest in the company and unless he notified the company and the plaintiff that he intended to charge interest upon its loans, it could not be said to be unreasonable for one in the plaintiff's situation to understand that interest was not to be paid. The question is not the same as if the services were performed by a stranger. The master was right in finding that the interest charges including the discount were wrongfully withheld by the defendant. In *Parker* v. *Nickerson*, 137 Mass. 487, the treasurer was not entitled to charge the corporation for procuring its notes to be discounted by furnishing his indorsement upon them, in the absence of a contract by the corporation to pay for such service; and in *Daniels* v. *Briggs*, 279 Mass. 87, 93, it was said that "Unless an agreement exists for payment of interest, an officer of a corporation cannot charge interest on amounts of his money allowed to remain with the corporation." *Sawyer* v. *Pawner's Bank*, 6 Allen, 207. *Pew* v.

*First National Bank of Gloucester*, 130 Mass. 391. *Von Arnim* v. *American Tube Works*, 188 Mass. 515. *Marcy* v. *Shelburne Falls & Colrain Street Railway*, 210 Mass. 197. *Apsey* v. *Chattel Loan Co.* 216 Mass. 364. *Sears* v. *Corr Manuf. Co.* 242 Mass. 395.

The fact that the defendant charged and was paid interest by the company from the time he began to lend money to it does not bind the company, because the defendant, as treasurer, had no authority to make such payments, *Sears* v. *Corr Manuf. Co.* 242 Mass. 395; *Young* v. *Titcomb*, 268 Mass. 14, and as the knowledge of the treasurer in the unauthorized use of the corporate funds was for his individual benefit and could not be imputed to the corporation, *Innerarity* v. *Merchants' National Bank*, 139 Mass. 332; *Stetson Press, Inc.* v. *Bunsen Oil Burner Corp.* 285 Mass. 291, the making of such interest payments would not amount to a ratification by the company. *Cashin* v. *Corporation Finance Co.* 251 Mass. 60. *James F. Monaghan Inc.* v. *M. Lowenstein & Sons Inc.* 290 Mass. 331.

The company was dissolved by an act of the Legislature in 1931. If it were in existence it would be the plain obligation of the defendant to reimburse the company to the amount of this discount and interest charges. *Von Arnim* v. *American Tube Works*, 188 Mass. 515. *Dolphin* v. *A. C. Lewis Leather Co.* 269 Mass. 132. But the affairs of the company have been closed; its creditors have all been paid; and the only other party in interest is the plaintiff, and he is entitled to receive his distributive share, or one third of the amount of these withdrawals. *Cummington Realty Associates* v. *Whitten*, 239 Mass. 313. *Antoine* v. *James E. Nelson Co.* 265 Mass. 214.

The plaintiff contends that he is entitled to one third of $8,000 included in the $28,000 that the defendant received from the Taylor note of $32,804.31.* By vote of June 16,

---

\* Findings by the master, confirmed by the court, respecting the note of Taylor Furniture Co. to C. H. Graham Furniture Co., called by the master "Graham's," as bearing on this $8,000 retained by the defendant in his accounting, were as follows: "Shortly after the receipt by Graham's of the note for $32,804.31, the defendant took this note over as his own property under the" stockholders' vote of June 16, 1923, described in the opinion. "On said note . . . the defendant credited himself with interest [referred

1923, the stockholders of the furniture company had authorized a partial dividend in liquidation in the amount of $30,000. The plaintiff had received $10,000 in accordance with this vote. The plaintiff held stock of the par value of $8,300; he had purchased this stock for $8,000, one half of which he paid in cash and the balance by a note payable only out of dividends declared upon his stock. The $10,000 received by the plaintiff was in excess of the par value of his stock. Anything in excess of that value was surplus. There was no vote declaring dividends after the vote of June 16, 1923, and the plaintiff contends that the defendant had no right to cancel this note and, after crediting the plaintiff with the amount of the note, to credit himself with $8,000. At the time this sum was taken by the defendant it was not certain what surplus, if any, would be available to the stockholders after the creditors had been paid, but as the affairs of the furniture company had been settled, upon the findings of the master, there was a surplus for distribution between the plaintiff and the defendant, who were the only stockholders, in the proportion of one third and two thirds respectively. We assume in favor of the plaintiff that the provision of the plaintiff's note means that he could not be required to pay except from dividends declared out of surplus and profits. *Willson* v. *Laconia Car Co.* 275 Mass. 435, 441. *United States Trust Co.* v. *Commissioner of Corporations & Taxation*, 299 Mass. 296, 301.

to in the opinion as 'discount'] . . . amounting to . . . $2,952.39. . . . When the note of $32,804.31 was paid, the defendant took for himself the sum of $28,000, and cancelled the note of the plaintiff for $4,000. This latter note as hereinbefore stated, was payable, according to its own terms, out of dividends declared on his shares of stock. No other payment was made by the plaintiff on the $4,000 note, and unless it has been discharged, as herein found, it is still outstanding. It was marked as cancelled on the books of Graham's by entries made in 1926, but the note itself was not returned to the plaintiff. Whether or not the above note constitutes a declaration of dividend is a question for the court to determine as a matter of law. It was not treated by the defendant's accountant as a dividend in preparing the defendant's income tax return for the year 1926, and the defendant, therefore, paid no income tax on it. There were no other votes ever passed by the directors of Graham's authorizing any dividends to be paid. In the event that the court should find that the vote hereinbefore referred to does not constitute a declaration of a dividend, and the court rules that the plaintiff's note of $4,000, is not a proper offset against the defendant's withdrawal of $8,000 of the $28,000 hereinbefore noted, then the defendant would be accountable herein for one third of $8,000 or $2,667." — REPORTER.

The plaintiff could not share in a distribution of surplus
and profits without applying them toward the payment
of his note.    It is true that a stockholder has no right
to a dividend until it has been declared by the authorized
representatives of the corporation, *Adams* v. *Eastern Massa-
chusetts Street Railway*, 257 Mass. 115, 131; *Anderson* v.
*Bean*, 272 Mass. 432, 444, but the furniture company had
ceased active operation and the plaintiff and defendant had
agreed that its assets should be turned into cash, its creditors
paid, and the balance distributed between them in the
ratio in which they held their stock in the company.    This
balance would properly include a set-off of the plaintiff's
share of the property up to the amount of his note.    It
might have been better if there had been a vote of the cor-
poration declaring a dividend involving the distribution of
the amount now in question, but it can hardly be said that
the parties, in view of the method they adopted in winding
up the affairs of the furniture company, intended that such
action upon the part of the furniture company would be
necessary.    The substance and effect of the transaction was
a distribution of surplus and profits among the stockholders.
The result was the same as though a formal dividend had
been declared.    *Underwood* v. *Lennox*, 242 Mass. 357, 362,
363.    Equity looks beyond the form to substance.    *Bryne*
v. *Dorey*, 221 Mass. 399.    *Greco* v. *Hubbard*, 252 Mass. 37.
The plaintiff's note was cancelled and he shows no right to
participate in the $8,000 received by the defendant.

At the close of the evidence before the master, the defend-
ant urged that, if he was not entitled to charge interest,
then he was entitled to compensation for services rendered
in liquidating the furniture company, in accordance with
his written contract of employment dated April 5, 1921,
and terminating April 1, 1925.    The plaintiff had an em-
ployment contract for the same term and at the same rate
of compensation as that payable to the defendant.    No
compensation was paid to either party after May, 1923.
The plaintiff never made any claim for further compensa-
tion.    The defendant took no action relative to compensa-
tion until his accountant included an item in the accounting

of January 17, 1927, that "there are still to be brought on the books of the corporation additional liabilities in the nature of compensation for services rendered the corporation" by the defendant in liquidating its affairs. This notation makes no mention of the defendant's contract of employment, and there is no finding by the master that any charge in a specific amount for such services appeared upon the books of the furniture company. The defendant had funds in his hands at the time the bill was filed, but he did not apply them or any other funds in satisfaction of any claim for compensation. As he had no intent to charge when the services were performed he cannot thereafter make any claim for them. *Silano* v. *Carosella*, 272 Mass. 203. *Ramseyer* v. *Conlon*, 303 Mass. 270.

The plaintiff and the defendant assisted in the liquidation of the furniture company. The plaintiff moved to New York in 1925 and left the completion of the work to the defendant, who promised to account to him when the liquidation was finished.

The parties occupied a position substantially similar to partners, and upon the facts reported by the master the defendant was not entitled to receive any compensation for the work done by him in winding up the affairs of the furniture company. No special circumstances are disclosed that make the case an exception to the general rule that a partner is not entitled to compensation for settling the business of the firm. *Dunlap* v. *Watson*, 124 Mass. 305. *Hoag* v. *Alderman*, 184 Mass. 217. *Wiggins* v. *Brand*, 202 Mass. 141. *Magullion* v. *Magee*, 241 Mass. 360.

The master finds that the discount and interest charges were received by the defendant in 1925. A fiduciary who has caused a loss through his unauthorized use of trust property must make good the impairment together with simple interest from the time the loss was incurred. The defendant must be charged with interest from January 1, 1926, as all of these payments had been received by that date. This rule is of general application. It has been applied to the misuse of corporate funds for his own benefit by the treasurer of a corporation. *Ball* v. *Hopkins*, 268 Mass. 260.

*Prudential Trust Co.* v. *McCarter*, 271 Mass. 132. *Medford Trust Co.* v. *McKnight*, 292 Mass. 1. *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398, 421. *Lydia E. Pinkham Medicine Co.* v. *Gove*, 303 Mass. 1. Am. Law Inst. Restatement: Restitution, § 138. If the parties are considered as partners the same result follows. *Dunlap* v. *Watson*, 124 Mass. 305. *Crabtree* v. *Randall*, 133 Mass. 552. *Shulkin* v. *Shulkin*, 301 Mass. 184.

Exceptions to findings of the master are not to be sustained in the absence of a report of the evidence, where the subsidiary facts are not inconsistent with each other or with the general finding. *Smith* v. *Knapp*, 297 Mass. 466. There was no error in overruling exceptions based upon the refusal of the master to make further findings. *Chase* v. *Chase*, 271 Mass. 485. There was no abuse of discretion in denying the motion to recommit. *Chamberlain* v. *Henry*, 263 Mass. 63. There is nothing in the other contentions of the parties that requires further discussion.

The appeals of each party from the orders for the entry of an interlocutory decree and a final decree have no standing and must be dismissed. Appeals in equity are confined to interlocutory and final decrees. *Gulesian* v. *Newton Trust Co.* 302 Mass. 369, 372. The interlocutory decree confirming the master's report is affirmed. The defendant has had in his possession since January 1, 1927, a balance of $596.44. A decree must be entered for the plaintiff for $3,274.15, being one third of the discount upon the Taylor note and the interest taken by the defendant for loans made to the furniture company, with interest at the rate of six per cent a year from January 1, 1926, to the date of the decree, and for one third of $596.44, with interest at said rate from November 23, 1936, the date of filing of the bill, to the date of the decree, together with costs.

*Ordered accordingly.*